**Floyd J. STEVENSON**

v.

**POINT MARINE, INC., XYZ Insurance Company.**

**Civ. A. No. 88–2766.**

United States District Court, E.D. Louisiana.

Oct. 27, 1988.

Bert M. Cass, Jr., New Orleans, La., for defendants.

## MEMORANDUM OPINION AND ORDER

BEER, District Judge.

Grace Offshore Co. ("Grace Offshore") employed plaintiff Floyd J. Stevenson on an outer continental shelf fixed-platform as a roustabout. On January 16, 1988, Grace Offshore commissioned Stevenson and other roustabouts to unload drilling equipment from the M/V POINT LIBERTY while it was docked alongside the platform. During unloading, a wave washed over the stern of the vessel causing its cargo to shift and injure the plaintiff's foot.

At the time of the accident, defendant Point Marine, Inc. ("Point Marine") owned the M/V POINT LIBERTY. Plaintiff seeks damages from Point Marine for negligence. Plaintiff purportedly bases his suit on the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–1356 [hereinafter OCLSA].

Defendant Point Marine now moves to strike plaintiff's demand for a jury trial. It maintains that plaintiff's negligence claim is grounded on a provision that OCSLA merely borrows from Longshore and Harbor Workers' Compensation Act section 5(b). *See* 33 U.S.C. § 905(b) [hereinafter LHWCA]. Ordinary LHWCA section 905(b) claims fall under federal *admiralty* jurisdiction [1]—not under federal question jurisdiction.[2] *Russell v. Atlantic & Gulf Stevedores*, 625 F.2d 71, 72 (5th Cir.1980). Therefore, Point Marine argues that no right to jury trial exists in OCSLA–LHWCA section 905(b) actions.

Plaintiff counterargues that he bases his claim on OCSLA rather than on the

---

1. *See* 28 U.S.C. § 1333.

2. *See* 28 U.S.C. § 1331.

LHWCA. As a result, this court has federal question jurisdiction—not admiralty jurisdiction. Thus, the Seventh Amendment guarantees his right to a jury trial.

## I. *Opinion*

### A. Coverage of OCSLA

OCSLA controls all cases "arising out of ... any operation conducted on the Outer Continental Shelf which involves ... production of ... minerals." OCSLA, 43 U.S.C. § 1349(b)(1); *see also Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988). Thus, whether OCSLA applies to the present case turns on whether Stevenson's injuries "arose out of" the production of minerals on the Outer Continental Shelf.

■ The Fifth Circuit has formulated a broad "but for" test to resolve this question. *Recar*, 853 F.2d at 369; *e.g., Herb's Welding v. Gray*, 766 F.2d 898, 900 (5th Cir.1985) (on remand); *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 340 (5th Cir.1982); *Stansbury v. Sikorski Aircraft*, 681 F.2d 948, 951 (5th Cir.1982). Under that test, a plaintiff's personal injury action is covered by OCSLA if his injury would not have occurred "but for" offshore drilling operations.

■ Here, Stevenson's injury certainly fits within the parameters of this "but for" test. "But for" oil drilling, Stevenson never would have been on Grace Offshore's fixed-platform. "But for" the platform, he never would have boarded the M/V POINT LIBERTY for necessary drilling equipment. In short, "but for" oil production, his foot never would have been injured. *See Barger*, 692 F.2d at 340. Therefore, Stevenson's action falls squarely within the scope of OCSLA. *Id.; Recar*, 853 F.2d at 369.

### B. Consequences of OCSLA Coverage

■ Because Stevenson is a person covered by OCSLA, that statute limits his right to recover from specific classes of parties.[3] Similar to an injured longshoreman, Stevenson cannot go outside of the applicable statutory scheme (OCSLA) (1) to recover damages from OCSLA "employers," and (2) to recover damages other than for negligence from vessel owners.

1. *OCSLA "Employers."*—Because OCSLA adopts the provisions of the LHWCA,[4] OCSLA-covered employees can recover only compensation benefits from OCSLA "employers." *See* LHWCA, 33 U.S.C. § 933(i) (as applied to fixed-platform workers by OCSLA, 43 U.S.C. § 1333(b)). An OCSLA "employer" is one "whose employees are [engaged] in [operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting ... the natural resources ... of the outer Continental Shelf]." 43 U.S.C. § 1333(b)(2) (quoted in *Barger*, 692 F.2d at 340).

In the present case, Stevenson's employer Grace Offshore is clearly an OCSLA "employer." Therefore, he can recover nothing more than workers' compensation benefits from it. Apparently cognizant of this, Stevenson did not join Grace Offshore as a defendant.

2. *Vessel Owners.*—Another consequence of OCSLA's wholesale adoption of the LHWCA is that OCSLA-covered employees have limited rights to sue vessel owners. *See* LHWCA, 33 U.S.C. § 905(b) (as applied to fixed-platform workers by OCSLA, 43 U.S.C. § 1333(b)). In the present case, Stevenson has sued vessel owner Point Marine for negligence. Because he demands a jury trial, the court must address the jurisdictional ramifications of a "905(b) action" in the context of an OCSLA suit.

---

3. *Cf.* LHWCA, 33 U.S.C. § 905(b). In the LHWCA context, section 905(b) expressly limits the rights of persons covered by the LHWCA to recover from negligent vessel owners. However, if a longshoreman is injured by a nonvessel third party, section 905(b) does *not* limit his cause of action. Such a longshoreman can bring a maritime tort action under the general maritime law. *E.g., Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706 (5th Cir.1981); *Solano v. Beilby*, 761 F.2d 1369 (9th Cir.1985). *See generally* T. Schoenbaum, *Admiralty and Maritime Law* 225 (1987).

4. OCSLA, 43 U.S.C. § 1333(b).

In the LHWCA context, a longshoreman's action against a vessel owner for negligence arises under the general maritime law—not under the LHWCA, 33 U.S.C. § 905(b). This is well-settled. When Congress enacted section 905(b) it did not "intend ... to create a new or broader cause of action in admiralty." *Parker v. South La. Contractors, Inc.*, 537 F.2d 113, 117 (5th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *see also, e.g., Harville v. Johns–Manville Prods. Corp.*, 731 F.2d 775, 787 n. 9 (11th Cir.1984); *Bynum v. Patterson Truck Lines, Inc.*, 655 F.2d 643, 644 n. 1 (5th Cir. Unit A 1981). Rather, it merely intended to preserve and limit nonstatutory admiralty remedies longshoremen previously had against vessel owners. *Russell v. Atlantic & Gulf Stevedores*, 625 F.2d 71, 72 (5th Cir.1980). *See generally* T. Schoenbaum, *supra* § 6–10.

Because section 905(b) did not create a federal statutory cause of action, a plaintiff-longshoreman cannot seek 905(b) relief in federal court under 28 U.S.C. § 1331. *Russell,* 625 F.2d at 72. Similarly, a longshoreman's 905(b) claim is not welcome in federal court under 28 U.S.C. § 1337.[5] *Id.; Parker,* 537 F.2d at 118.

Stevenson, however, maintains that because this is an OCSLA case, this court has jurisdiction over his "OCSLA–905(b) claim" under OCSLA's jurisdictional provision, 43 U.S.C. § 1349(b)(1). That provision states,

"the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with [offshore operations]." *Id.*

OCSLA does give federal district courts subject matter jurisdiction to adjudicate claims "arising under the Act." *Recar,* 853 F.2d at 369. However, as discussed above, a negligence action against a vessel owner is a creature of nonstatutory maritime law. Section 905(b) of the LHWCA created nothing; it merely *limited* an existing right. *Parker,* 537 F.2d at 117. Likewise, OCSLA's adoption of section 905(b) (along with the rest of the LHWCA) did not spontaneously create a new statutory right of action against negligent vessel owners; it merely limited any existing rights OCSLA-covered employees might have had against such vessel owners.

■ OCSLA gives this court jurisdiction to limit Stevenson's existing right to sue a vessel owner for a maritime tort. However, it does not provide jurisdiction for this court to grant affirmative relief under section 905(b). Because OCSLA created no cause of action against a vessel owner cognizable "under the Act," Stevenson's "OCSLA–905(b) action" is cognizable only under this court's admiralty jurisdiction.[6] Because admiralty courts traditionally sit without a jury,[7] the court must GRANT the defendant's motion, and strike the plaintiff's demand for a trial by jury.[8]

**5.** 28 U.S.C. § 1337(a) provides that the "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce...." *Id.*

**6.** There is no complete diversity of citizenship here. Therefore, diversity jurisdiction, 28 U.S.C. § 1332, is not an option. *See, e.g., Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

The court clearly has admiralty jurisdiction over Stevenson's claim against Point Marine. Under *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 267–69, 93 S.Ct. 493, 504–05, 34 L.Ed.2d 454 (1972), this court has admiralty jurisdiction over tort actions when (1) the wrong occurs in navigable waters, and (2) the wrong bears a "significant relationship to traditional maritime activity." *See also, e.g., Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).

Here, both the "locality" and "nexus" prongs of *Executive Jet* are satisfied. First, Stevenson was injured on navigable waters—the Gulf of Mexico. Second, Stevenson was injured on board a vessel when cargo shifted onto his foot. It is difficult to imagine a tort with a more "significant relationship to traditional maritime activity." *Executive Jet,* 408 U.S. at 268, 93 S.Ct. at 504.

**7.** *See generally* G. Gilmore & C. Black, *The Law of Admiralty* 35 (1975).

**8.** In the alternative, to whatever extent here that OCSLA jurisdiction may "overlap" with this court's admiralty jurisdiction, the court must resolve the "resulting jurisdictional conflict ... in favor of [admiralty jurisdiction]." *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1229 (5th Cir.1985); *Recar,* 853 F.2d at 369.

II. *Order*

After considering the memoranda submitted by counsel, the record, and the applicable law, IT IS ORDERED THAT the plaintiff's demand for a trial by jury be STRICKEN.